AMERICAN AUTOMOBILE INSURANCE ASSOCIATION v. F. Y. FOLSOM.

161 So. 434.
Division B.
Opinion Filed May 11, 1935.

E. W. & R. C. Davis, John H. Carter and John H. Carter, Jr., and Waller & Pepper, for Plaintiff in Error;
Carter & Pierce, for Defendant in Error.

BROWN, J.—J. Y. FOLSOM, defendant in error, plaintiff below, brought this suit against the American Automobile Insurance Association, and based his cause of action upon statutory form of declaration, alleging therein that he purchased what is known as a $25.00 deductible collision insurance policy ,and that he paid $29.50 for the same, and that the policy was issued to him on the 25th day of September, A. D. 1929, expiring at noon on the 25th day of

September, A. D. 1930, on a certain motor vehicle, to-wit: a 1929 Buick sedan; and further alleges in and by his declaration that on March 4, 1930, in Washington County, Florida, he had a collision and that said automobile as covered by the policy was damaged to the extent of $800.00, and that the defendant had refused to pay the loss. Copy of the insurance policy was attached to the declaration.

The defendant pleaded that on the 25th day of September, A. D. 1929, it issued its insurance policy to the said F. Y. Folsom insuring the plaintiff against actual loss or damage caused solely by accidental collision with any moving or stationary objects; that said policy went into force on the 25th day of September, A. D. 1929, and went out of force on the 25th day of October, A. D. 1929, unless the balance of the premiums called for in the policy were paid. Defendant further alleges that the plaintiff paid the service charge of $7.50, which placed the policy in force from the 25th day of September, A. D. 1929, to the 25th day of October, 1929, but that the plaintiff failed to pay the premium, to-wit, $11.00, due on the 25th day of October, 1929, which would have carried the policy in force from the 25th day of October, 1929, to the 25th day of March, 1930. Defendant further set up in the said plea that the said policy of insurance carried the following provision, "payments herein specified must be made on the due dates or policy will lapse. 1st payment C. O. D. $7.50; and payment due October 25, 1929, $11.00; 3rd payment due March 25, 1930, $11.00."

Deponent further alleged and set up in said plea the following clause in the said insurance policy: "Failure of the assured to pay, at the Home Office, any premium deposit on the due date noted herein, shall immediately on said due date and without notice, terminate and lapse the indemnity

provided for in this contract as far as losses subsequently occurring are concerned."

Defendant further alleged in the said plea that the damage set out in the declaration was sustained on the 4th day of March, A. D. 1930, which was after the date on which the said policy had lapsed for nonpayment of premium.

The plaintiff joined issue on the defendant's plea, and also filed a replication setting up therein that the defendant, after the alleged loss set out in the declaration, "offered to settle with the plaintiff for such loss, and waived the provision of said policy set up in said plea and recognized the said policy in full force and effect." Trial was had upon these issues thus made and a verdict returned for the plaintiff in the sum of $600.00 damages and $60.00 attorney fees.

The defendant's plea did not deny that plaintiff's automobile had been in a collision and had been damaged, but it set up by way of confession and voidance that plaintiff had failed to pay the premium which fell due on October 25, 1929, and that under the terms of the policy, the policy had lapsed and was not in force or effect at the time of the collision and damage to plaintiff's car.

Plaintiff joined issue on the defendant's plea and testified that he had paid the premium on the policy, in a way not provided in the policy, that is, plaintiff said that he had performed certain dental work for defendant's agent and that said agent owed him a dental bill of $35.00 and that said agent agreed to pay plaintiff $5.50 in money and to deliver him the policy in payment of the balance due on the dental bill, and that he therefore considered that the premium had been paid as agreed on, and had never been notified prior to the accident that the policy had been voided by the company. The agent testified that he was the local agent of the defendant company in Marianna for the pur-

pose of soliciting applications for insurance; that during the month of September, 1929, he solicited the plaintiff's business and received an application from him for the policy sued upon and mailed it to the office at Orlando; that plaintiff never paid him any money for or on the policy; that the first premium or service fee was $7.50 on this particular policy; that $5.00 of that would be his commission and $2.50 would be the "net" to be mailed to the home office; that he mailed the $2.50 to the home office, which was the only amount he ever sent them, and that he received the policy and turned it over to plaintiff. That about October 24, 1929, plaintiff brought him, the agent, a notice of premium due on the policy and requested him to pay said premium, whereupon he informed plaintiff that he, said agent, was financially unable to pay the same. He admitted that he had had some dental work done by plaintiff, but being unable to pay him, he had never had the dental work fully completed. Defendant introduced other testimony showing that it had never received any payment on the policy other than the payment testified to by the agent, which non-payment caused the policy to lapse before the plaintiff's accident happened.

Plaintiff in error, defendant in the court below, contends that an agent to solicit applications for policies and to receive and deliver the same has no authority to make a private agreement of the kind testified to by the plaintiff below without the knowledge or consent to such transaction on behalf of the company; citing Tonocook v. Travelers Ins. Co., 113 Wis. 114, 88 N. W. 1013; Sovereign Camp W. O. W., v. Blanks, 208 Ala. 449, 94 So. 554. Defendant in error contends that the act of the agent in agreeing to pay the future accruing premiums on the policy for and on behalf of the defendant in error, in payment of his dental

bill to defendant in error, was within the apparent or implied authority of the agent and binding upon the principal; citing Eagle Fire Co. v. Lewallen, 56 Fla. 246, 47 So. 171; American Fire Ins. Co. v. King Lumber & Mfg. Co.; 74 Fla. 130, 77 So. 168. The cases cited are authority for the general proposition that the acts of an agent performed within the scope of his real or apparent authority are binding upon his principal and that the public have a right to rely upon the agent's apparent authority and are not bound to inquire as to his especial powers, unless the circumstances are such as to put them upon inquiry, but the cited cases do not deal with such a state of facts as are involved in this case. In this connection we might call attention to Section 6207 C. G. L. and the cases cited in the note construing such section, and in addition thereto, the comparatively recent case of Parsons v. Federal Realty Corporation, 105 Fla. 105, 143 So. 912-915, wherein the case of Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 60 L. Ed. 1202, 36 S. C. 676, was cited and discussed.

But it is unnecessary for us to determine this question. In addition to taking issue on defendant's said plea, the plaintiff in the court below filed a replication, hereinabove set forth, to the effect that after plaintiff's alleged loss, the defendant company had offered to settle with the plaintiff for such loss, and waived the provision of the policy set up in said plea and recognized the policy to be in full force and effect. There is evidence in the case tending to prove the allegations of this replication. The testimony shows the defendant company offered to pay the plaintiff $400.00 in settlement of the loss, which offer plaintiff declined to accept, and brought this suit. The defendant did not demur to this replication, but accepted the issue tendered and went to trial thereon. Thus the case went to trial upon two

issues, the plaintiff's joinder of issue on defendant's plea that the policy had lapsed for nonpayment of premium installments, and the replication just referred to. The correctness of the court's rulings throughout the trial must be determined in the light of both these issues. In the case of Evans v. Kloeppel, 72 Fla. 267, 73 So. 180, this court, speaking through Mr. Justice ELLIS, said:

"In the case of Hood v. French, 37 Fla. 117, 19 South. Rep. 165, this court, speaking through Judge Call of the Fourth Circuit, who sat on account of the disqualification of one of the judges of this court, said: 'It is the business of parties litigant to frame their pleadings properly. When a party fails or neglects to demur to faulty pleadings, but takes issue thereon, he cannot be allowed to withdraw the issue made thereon from the consideration of the jury sworn to try these very issues.' The parties to the cause and their counsel must be held to some responsibility in presenting the issues to be tried, and there is no more effective method than by holding them to a strict accountability. It has frequently been decided that however immaterial, defective or demurrable a plea may be, if issue be joined upon the plea, and the evidence sustains it, the defendant has the right to have the court charge the jury upon such pleas."

"The one fact in issue in this case, as tendered by the pleas, was the unlawful taking of the property. As immaterial as that fact was and as defective and demurrable as the plea was as a defense to the first count of the declaration, the plaintiff joined issue upon it. The evidence amply sustained it, and of course the verdict should have been for the defendant upon that plea. The charge of the court practically withdrew from the jury the consideration of the immaterial issue presented by the first plea. That was error. Hood v. French, *supra;* Jones v. Shomaker,

41 Fla. 232, 26 South. Rep. 191; Clyde Steamship Co.v. Burrows, 36 Fla. 181, 16 South. Rep. 349. It does not follow, however, that when a cause has been tried upon an immaterial issue which does not determine the rights of the parties in the litigation, that judgment should be entered upon the finding on such a plea. Such was the rule in Alabama, but our court has not gone to this extent. It follows, therefore, that even if there had been a verdict for the defendant upon the immaterial issue tendered by the first plea and accepted by the plaintiff, the court would not have given judgment for the defendant, but would have probably, under the circumstances of this case, awarded a repleader. Such would have been the proper course, for if judgment is entered upon a verdict rendered upon an immaterial issue, the appellate court should reverse it, though it may not direct a judgment of repleader. See American Process Co. v. Florida White Press Brick Co., 56 Fla. 116, text 126, 47 South. Rep. 942; Owens v. Wilson, 58 Fla. 335; 50 South. Rep. 674; Hyer v. Vaughn, 18 Fla. 647; Ruling v. Florida Savings Bank, *supra.*"

See also Cole Water Co. v. O'Kelly, 101 Fla. 198, 135 So. 874.

So, under these cases, we would not be authorized to hold the trial court in error for charging the jury on the issues as made up by the pleadings.

There was no motion in the court below to set aside the judgment, and allow repleader.

But aside from the proposition just discussed above, we are by no means convinced that the replication hereinabove quoted tendered an immaterial issue. There might be some difference of opinion as to whether the replication alleged conclusions of law, or merely ultimate facts. In other words, it may be that there was some defect in form. But the fact

remains that the replication does allege that after the loss the defendant company offered to settle with the plaintiff for such loss and waived the provision of the policy as set up in said plea and recognized said policy in full force and effect. In substance, therefore, we are of the opinion that the replication was good and it cannot be held to have tendered a mere immaterial issue. The evidence tended to show that the plaintiff had no notice before the loss that the defendant company had voided his policy for nonpayment of premium installments, and that the claim manager of the company recognized the policy as being in effect after the loss, and the evidence also tends to show that after he learned that the premium installments had not been paid at the home office, he offered to settle the claim and deduct from the amount of the settlement the unpaid premium installment. The plaintiff in the court below testified that the claim adjuster whom the company sent to see him, said to him: "This fellow Cornell (the company's agent) took your money, Doctor, and you are not responsible for the fact he did take it; you thought you were covered, and he wrote us something to the effect of taking care of your policy, which I didn't know until I got back to the home office. We offer you $400.00 on your policy just the same, less the $25.00 deductible."

That the replication, in substance, stated a good reply to the plea setting up the nonpayment of the later premium installment as indicated by the cases of Palantine Ins. Co. v. Whitfield, 75 Fla. 716, 74 So. 869, and the other Florida cases therein cited. In the Palantine Ins. Co. case, this Court said:

"If an insurance company intends to stand on a forfeiture clause of its policy, it should so inform the insured as soon as practicable after it ascertains the facts upon which

it bases its claim of forfeiture. In this case, after more than two months had elapsed, and after a full investigation and adjustment of the loss, and the insurance company had been acquainted with the result of its adjuster's investigation, they were not only silent about any claim of forfeiture, but sought to lull the insured to sleep by writing him that they neither admitted nor denied liability under the policy."

"It seems to be settled in this State that notwithstanding the strong language used in an insurance policy to the effect that a violation of certain clauses therein will cause it to 'become null and void' the policy is not void, but voidable, and that a forfeiture clause may be waived by the insurance company; and such waiver may be established by the acts and statements of the representatives of the insurance company. Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla. 268, 35 South. Rep. 171; Eagle Fire Ins. Co. v. Lewallen, 56 Fla. 246, 47 South. Rep. 947; Caledonian Inc. Co. v. Smith, 65 Fla. 429, 62 South. Rep. 595."

"It appears from the testimony that after having knowledge of the facts which might have constituted a forfeiture, the company proceeded to adjust the loss, and after its completion and after consultation with the company its representative offered to pay the insured six hundred and eighty-eight dollars for his loss on the stock of merchandise and three hundred and twelve dollars for its loss on store furniture and fixtures. Both of these items were embraced in the policy sued on. The amount on the former was twelve hundred and twenty dollars, and on the latter seven hundred and eighty dollars. It is true that in the written offer of settlement, they state that the same is made 'in a spirit of compromise;' but the fact that they make an offer to pay forty per cent. of the amount of the policies, after a

full investigation and adjudication of the loss, amounts to a waiver of any right to a forfeiture, and shows that the compromise they propose is in relation to what they think may be due, and not in compromise of any of the matters out of which a forfeiture could be claimed. As was said in Tillis v. Liverpool & L. & G. Ins. Co., *supra,* 'If these acts do not constitute an express waiver, they could only have been done by virtue of the obligation of a valid policy, and therefore the company knowing of the forfeiture, by such act waived it, and are bound by such waiver. A non-waiver agreement may itself be waived."

Plaintiff in error contends that the evidence merely shows an offer to compromise, but the evidence goes further than that. It shows a definite offer to settle for a definite sum. We therefore think that there was sufficient evidence to submit the issue tendered by said replication to the jury. And for a like reason, we would not be authorized to hold that the trial erred in overruling the motion for a new trial.

Counsel for the Insurance Association earnestly contend that an offer of settlement does not waive the default in the payment of premiums, which default, under the terms of the policy, caused it to lapse; that the offer was not accompanied by any admission of liability on the part of the company, and that the making of the offer did not cause any detriment to Dr. Folsom, nor was he misled, or induced to do anything, or to omit to do anything, which he would otherwise have done. It is also contended that the general principle that a party may, without prejudice to his rights, offer to buy his peace, applies; citing Clark v. Pope, 29 Fla. 238, 10 So. 586; 12 C. J. 318; Richards v. Continental Ins. Co., 83 Mich., 508, 47 N. W. 350, 21 A. S. R. 611; Neal v. Gregory, 19 Fla. 356; 21 C. J. 1126, 1133-5; Gibson

Electric Co. v. Liverpool & London & Globe Ins. Co., 159 N. Y. 418. Our attention is also directed to 14 R. C. L., 1195-6, Sec. 373, which reads in part as follows:

"An offer to compromise a loss without any admisison of liability or coupled with a denial of liability is not a waiver of the insurer's rights, and even an admission of liability to some amount, made in negotiations for a settlement, had been held not to operate as a waiver. However, where, after loss, the insurer is fully informed of facts which might work a forfeiture under the policy, and he informs the insured that he does not intend to stand on technicalities contained in the policy, such action is a waiver of a condition in the policy, and it cannot afterward be insisted upon in defense, according to some courts, though this has been denied by other courts on the ground that the insured is not misled thereby to his detriment."

The writer is very much impressed by the force of the argument presented by counsel for plaintiff in error in this connection, but it seems that the rationale of our own former decisions in insurance cases is to the contrary. If this were a case of first impression, the writer might take a different view. While here the facts are somewhat different from those involved in our previous cases, the controlling principle appears to be the same. We therefore hold that the said replication to defendant's plea did not present an immaterial issue, and that no reversible error is made to appear.

The judgment is accordingly affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.